# PATRICK J. JOYCE, ESQ.

Attorney at Law
70 Lafayette Street - 2nd Floor
New York, New York 10013
(212) 285-2299
FAX (212) 513-1989

New Jersey Office:
658 Ridgewood Road
Maplewood, NJ 07040
(973) 324-9417


July 31, 2019

Honorable Judge Jessie M. Furman
United States District Court
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

**Re: United States v. Janis Berns, 1:16-CR-00692-JMF-19**

Dear Judge Furman,

I am the attorney for Janis Berns, the defendant in the above-captioned matter. Mr. Berns is scheduled to be sentenced before your Honor on August 14, 2019 at 9:00 a.m. This letter is submitted in an attempt to advise the Court of the defendant who will sit before it, and to aid the Court in its determination of an appropriate sentence.

The goals of sentencing are to impose a punishment that is proportional to the injury to the victims and to society at large; one that will deter other like-minded individuals from engaging in the acts that bring a defendant before the court; incapacitate a person from committing such acts again; and importantly, to rehabilitate. Janis Berns, a relatively young defendant who has never before had criminal or legal issues, is the kind of defendant who has learned from the grave position he is in and is sufficiently rehabilitated and deterred from encountering it again.

Janis Berns is 28 years old and is a Latvian citizen. In his home country, he has spent his entire life surrounded by people who will do anything that is necessary to provide and support their families. He is one of two children to Aldis Berns and Lolita Berns, both Latvian citizens. Though Janis claimed that his childhood was unremarkable, he briefly—in the way that defendants who are accustomed to their life circumstances do—mentioned that his family struggled financially, especially when he was younger when the Latvian economy suffered from a depression in the 1990s. PSR 17. His father, Aldis Berns works selling timber and his mother, Lolita Berns, works as a healthcare professional. Though still happily married, Janis' parents

have lived separately for years. Aldis Berns lives in Balvi, Latvia, where Janis was raised, while his wife lives in Oslo, Norway. Id. Janis explained that both have always been hard workers and are committed to the careers that are supporting their family. Even in the midst of his legal issues, his parents and his sister remain supportive. In early February 2019, Lolita and Janis' sister, Sabine, traveled to the United States to visit him and to physically bring documents they thought might help.

One of Janis' greatest regrets is that his involvement in the conspiracy for which he is charged has left him in the position where is not able to give the same support he has received during his life. In 2016, when Janis was 26, he met Dita Petrova, with whom he had a child. Id. Since his arrest and incarceration, Janis has not been able to provide any assistance with raising his son, and has nothing to financially support his family. His child is now two years old, and must live and be cared for with Ms. Petrova's parents. Id. In an effort to improve their circumstances, Ms. Petrova is in training to become a police officer, but in the meantime cannot support herself or her son. While Ms. Petrova remains supportive to Janis, he expressed the difficulties his actions had caused his fiancé and his son, and how important it is to him to provide for them.

With the exception of the events that will bring him before Your Honor on August 14th, Janis Berns had never been to the United States before and had lived in Latvia. Upon his release, he intends to return to Riga, Lativa where Ms. Petrova and their son live, and not to return to the United States. The Court can be sure that Janis has been sufficiently punished and warned by his arrest and incarceration in the United States, and has no intention of ever engaging in criminal conduct going forward.

This is further proven by the fact that Janis has never denied involvement in the conspiracy. According to the government, the conspiracy began in 2015 and involved individuals in both the United States and Eastern Europe. This network of individuals targeted victims by setting up fraudulent sales online and using legitimate business names. PSR 7. Upon one of these fraudulent sales, the victim would deposit their payment into a bank account opened by a co-conspirator. Once the money was deposited, the funds would be withdrawn from various ATMs. Id. Janis Berns was not involved with this conspiracy from the beginning. Janis was charged with conspiring to commit wire fraud and conspiring to defraud a financial institution from October 2018 to December 2018, a timeframe which corresponds directly to his time in the United States. PSR 3. Janis has been upfront about his involvement from the moment he was arrested.

When arrested, Janis informed the agent that he had been recruited to travel to the United States to open bank accounts and withdraw money from those accounts. PSR 11. He acknowledged then, and he acknowledges now, that his actions were wrong and illegal. He explained that he was promised payment for his participation and that upon arriving in the United States he met with a person he referred to as a Handler. Id. This Handler helped Janis open the bank accounts, as he was instructed to do, and provided him with the paperwork that would be necessary. Although the Government and Probation attribute the loss of over $380,000 to Janis and four co-defendants, all together, Janis received approximately $10,000 for his involvement. Id.

On April 30, 2019, Janis pleaded guilty to count 1 of conspiracy to commit bank and wire fraud, pursuant to a plea agreement signed on March 28, 2019. PSR 3.

**The Appropriate Sentence:**

The calculated Guideline Range is 33-41 months' imprisonment. PSR 4. Probation has made the recommendation that Janis be sentenced to 33 months, taking into considering that the total loss value attributed to Janis and the co-defendant with whom he was grouped. It is the defendant's position that after the court considers all of the relevant factors that a sentence of time served would be reasonable. This sentence would meet the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," as stated in Kimbrough v. United States, 128 S.Ct 558, 571, 169 L.Ed 481 (2007).

It should be noted at the outset that a flaw of the Guidelines is that they are constructed almost solely of *aggravating* factors. The only mitigating factors are acceptance of responsibility points and role in the offense. Since the Supreme Court's decision in Booker, the case law is clear that although a Guideline calculation is a necessary beginning point of any sentence consideration, it should not be the final arbiter of what a reasonable and just sentence should be. The case law has also made it clear that a court can deviate from the Guidelines if it feels that the Guidelines require a sentence that is greater than necessary to satisfy the factors of § 3553. The Supreme Court has urged each sentencing court to consider *all* mitigating factors and to reject policy statements of the Guidelines that restrict the use of mitigating factors. See, United States v. Rita, 551 U.S. 338 (2007) and United States v. Gall, 552 U.S. at 50 n.6, 58-60 (2007). Gall at 59 n.11 requires that a sentencing court consider all "kinds of sentences available" under § 3553 even if the Guidelines only recommend a prison sentence, as here. In fact, courts are now invited to consider arguments that the applicable guidelines fail properly to reflect §3553(a) considerations, reflect an unsound judgment, do not treat defendant characteristics in the proper way, or that a different sentence is appropriate regardless of the Guidelines. Rita, 127 S. Ct. at 2465. Courts "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," Kimbrough, 128 S. Ct. at 570 (internal quotation marks omitted), and when they do, the courts of appeals may not "grant greater fact-finding leeway to [the Commission] than to [the] district judge." Rita, 127 S. Ct. at 2463.

Here, a significant variance is warranted. It is the defendant's position that a Guideline sentence would be inappropriate in Janis' case. As previously stated, "no chart of numbers will ever fully contemplate, quantify and cipher the endless variations of the human experience. While it might provide a normalizing force in sentencing, we cannot, with a system of points and categories, reduce justice to a universal formula." United States v. Coughlin, No. 6 Cr. 20005, 2008 WL 313099 (W.D. Ark Feb.1, 2008). There are a number of considerations under § 3553, including the nature and circumstances of the offense and the history and characteristic of the defendant, the need for the sentence imposed to reflect the legislature's goals of sentencing, the need to avoid unwarranted sentence disparities among the defendants, and the need to provide restitution to any victims of the offense.

As explained above, Janis Berns comes from an environment of support, which will be and still is present, despite his acknowledged misstep. Not only will he not return to criminal conduct because of this support, but because he has learned from his time incarcerated. Since December 2018, Janis has lost weight and broken out in rashes. Just as he had never previously had any criminal issues, he has not received any incident reports while detained. PSR 7. He is an individual who has had no other legal or criminal issues in his past. He drank only socially, explaining that he would only have a cocktail about once a month with friends. He's had no issue with substance abuse and continues on that path. So much so, that Probation requests that the mandatory drug-testing be waived for Mr. Berns. PSR 27.

Of note, is that Janis has struggled to find his place in life. He graduated from the equivalent of what would be high school for an American with an emphasis in vocational studies and did a term on a cruise ship as a cook for a regional passenger and cargo shipping company. When his term ended, he worked in customer service and later as a taxi driver. He attempted to further his studies, first studying e-business and logistics, before moving on to computer science. Though he has not completed his education, Janis has a significant number of skills to which he can return to find legal employment and support his family. He has skills in food services, in welding, and has a class "C" license, which allows him to operate trucks. He also speaks four languages, and even during his presentence interview insisted that he would continue to improve his English. PSR 18.

Besides his personal traits and reform, § 3553(a)(6) requires sentencing courts to avoid "unwarranted" sentencing disparities. Such "unwarranted" disparities can arise if similarly-situated co-defendants are treated differently for sentencing purposes. The Government and Probation situate Janis Berns and Raitis Grigorjevs, Agris Petrovs, and Valters Volksons along the same tier. In the presentence report, in particular, Probation notes that "investigating, apprehending, and prosecuting those involved, particularly the individuals at the highest levels of the scheme" is imperative. However, Janis is not an individual at the highest level of this scheme. He admitted upon his arrest and in his plea that his involvement was to meet with a Handler, and with this Handler open accounts and complete registrations as instructed. It does not send a message to the Handlers or the members of the conspiracy higher up to punish Mr. Berns with the severity due to them. His co-defendant Raitis Grigorjevs was sentenced to 1 year and 1 day with a term of supervised release for 3 years on July 22, 2019. PSR 6. Mr. Grigorjevs, however, was named on bank accounts that received over $161,000, more than the $108,000 deposited into accounts under Janis' name. PSR 12. So, although the Guidelines suggest that Janis be sentenced to 33-41 months' imprisonment, such a sentence would be in direct conflict with §3553(a). Like Mr. Grigorjevs, Janis did not exercise any control over the conspiracy. He did not induce the individuals victimized by the conspiracy to deposit their funds, and he did not communicate with any of the victims.

Probation also emphasizes in its recommendation, that the need to provide restitution to the victims of the conspiracy is of utmost importance. Still, it recommends a sentence of 33 months, alleging because Janis will likely be deported from the United States to Latvia, "the collection of restitution from the defendant, totaling $380,345.00, will be highly unlikely." PSR 26. However, none of the victims will be benefitted by the long-term incarceration of Janis Berns, especially not in regards to their restitution. The Presentence Report acknowledges that

while incarcerated, Janis' contribution to restitution will be marginal, derived from the wages he receives as a BOP inmate. A sentence of time-served will have sufficiently incapacitated the defendant and make it feasible for him to return to Latvia, where he will need to earn an income, not just to provide for his family, but to provide restitution.

## Conclusion

When considered under these parameters the defendant respectfully submits that the requested sentence of time served with followed by a term of supervised meets the requirements of the sentencing statute. It cannot be said that Janis Berns has not been punished for his acts. As in Gall, the Court here is presented with an individual who has been sufficiently punished and who will now begin to live a new chapter of his life.

Respectfully submitted,

/s/ Patrick Joyce
Attorney for Janis Berns

CC: Matthew Hellman
AUSA